IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE H.L.O.T. FAMILY LIMITED PARTNERSHIP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION 1:17-00341-KD-M |
| | ) | |
| PROPERTY OWNERS ASSOCIATION OF SPANISH COVE, INC., | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the parties' cross-motions for summary judgment: Plaintiff's partial motion for summary judgment (Doc. 33)[1] and Defendants' Response (Doc. 39); and Defendant's motion for summary judgment (Doc. 34) and Plaintiff's Response (Doc. 40).

## I.    Findings of Fact[2]

This dispute surrounds certain undeveloped real property lots subject to, and encumbered by, a recorded "Amended And Restated Declaration of Covenants, Conditions and Restrictions Applicable to Spanish Cove, A Planned Unit Development" (Declaration), in the Spanish Cove subdivision in Baldwin County, Alabama.  (Doc. 1-1).  On July 25, 2017, Plaintiff, the H.L.O.T. Family Limited Partnership (HLOT) sued the Defendant Property Owners Association of Spanish Cove, Inc. (POA) over the POA's imposition of impact fees issued per an October 2006 Operating Procedure 3.4 amendment to the contract, from which the POA seeks to recover $378,000 from

---

[1] HLOT only moves for summary judgment on Count I (declaratory judgment) but not on Count II (breach of contract).  POA moves for summary judgment on both counts.

[2] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

HLOT.  (Doc. 1).  HLOT seeks entry of a declaratory judgment (Count I) finding that the fees are impermissible under the controlling contractual documents and Alabama law such that: 1) it is not obligated to pay the fees in connection with development of its lots, 2) the POA must provide it with all records pertaining to its lots within POA's custody/control, and 3) it is entitled to recover attorneys' fees in connection with its enforcement of the contract against the POA.  (Doc. at 9-10). Additionally, HLOT alleges a separate breach of contract (Count II) claim against the POA.  HLOT contends that the POA breached the contract due to: 1) the POA's imposition of "unlawful" impact fees on HLOT's future developments (currently existing undeveloped lots); 2) by refusing to provide documents that HLOT requested as required by the contract; and 3) by failing to provide notice to HLOT as required by the contract.  (Id. at 12).

Specifically, on April 30, 2004, HLOT purchased 189 lots in the Spanish Cove subdivision in Baldwin County, Alabama (##3051-3094, 3098-3153, 3159-3184, 3189-3223, 3230-3239, and 3245-3262). The lots are subject to, and encumbered by, the contract. See supra and Doc. 1-1. Pursuant to the contract, HLOT's 189 lots were initially exempt from POA assessments, but when lots are developed, sold or conveyed, they become subject to assessments:

> **Section 11.01.   Creation of the Lien and Personal Obligation for Assessments, Charges, Fees and Monetary Fines**.  Except as provided in this **Declaration**, each **Owner** of any **Lot** by acceptance of a **Deed** for said **Lot**…is deemed to covenant and agree to pay…annual and special **Assessments**, charges, fees and monetary fines as may be established from time to time by the **Board of Directors**.  **Provided, however**, except as provided in this **Declaration**, no **Assessments** shall be due on…the following…**Lots**:
> ***
> **Lots 3051** through **3055**…
> **Lots 3056** through **3094**….
> **Lots 3098** through **3153**……
> **Lots 3159** through **3184**….
> **Lots 3189** through **3223**…
> **Lots 3230** through **3239**….
> **Lots 3245** through **3262**…..
>
> **Provided, Further:**

\*\*\*

B.  When any such **Lot** described in this <u>**Section 11.01**</u> (other than a **Commercial Lot**) becomes a **Developed Lot** or is sold or conveyed….then said **Lot** shall be assessed in accordance with the provisions of this **Declaration**.

\*\*\*

(Doc. 33-2 at 34-35 (emphasis in original)).   HLOT explains that its lots are exempt from assessments because such were "prepaid" through the Bulk Owner's[3] contribution of land for "common areas" via a 1991 Assignment and Assumption Agreement incorporated into the Declaration.  (Doc. 33 at 9, 16).   In other words, HLOT asserts that its lots are exempt from assessments until developed: "Bulk Owner has, by virtue of the conveyance by the Cove Club and SP Cover of the Common Properties to the Association prepaid any and all assessments that the Bulk Owner would otherwise owe to the Association as an owner of Lots…"  (Id. (citing Doc. 33-1 at Section 5.1 at 4)).  Per HLOT, some lot owners paid assessments and received the right to vote and enjoy amenities, whereas other lot owners (e.g., HLOT) "prepaid" fees that would otherwise be due based on their "in kind" contributions and in turn did not and would not receive voting/amenities rights "until such lots become developed."  (Doc. 33 at 16).  The POA agrees HLOT's lots are assessed when HLOT "may take steps to develop those lots…." (Doc. 39 at 1).

The contract establishes that the POA is responsible for establishing and collecting certain fees, charges and assessments, and that the POA is restricted in the manner it does so by the Alabama Nonprofit Corporation Act, the POA's articles of incorporation, the contract itself, and the POA's by-laws.  (Doc. 1 at 4; Doc. 1-2).  The POA is funded, primarily, via collection of assessments per Section 1.03 -- financial contributions by the lot owners to the POA -- essentially regular or annual assessments.  (Doc. 33-2 at 4).  Section 10.12 also provides that the POA "shall establish and maintain an adequate reserve fund for the periodic maintenance, repair and

---

[3] The Bulk Owner was HLOT's predecessor in owning the lots.  (Doc. 33 at 16).

replacement of Improvements to the Common Property. The fund shall be maintained out of regular Assessments for Common Expenses." (Doc. 33-2 at 34).

On October 3, 2006, the POA implemented (and issued) Operating Procedures to the contract, including Operating Procedure 3.4: "an Impact Fee of $2,000 for each new dwelling constructed on developments located within Spanish Cove boundaries…to help offset increased expenditures due to increased usage of Spanish Cove streets, clubhouses, swimming pool, tennis and badminton courts and other facilities. This Impact Fee will not apply to individual existing individual lots in other areas of Spanish Cove." (Doc. 33-4).  Per the POA meeting minutes, "[t]he impact fee will apply to all new developments starting in Spanish Cove. Everything that exists in Spanish Cove at this time will not be affected by the impact fee."  (Doc. 34-1 at 2).

As of 2017, HLOT had sold 26 of the 189 lots to another developer, who began developing 3 lots and paid an impact fee for each of those 3 lots, and HLOT believes the impact fees have been paid on each of those 26 lots based on its contract with the developer.  (Doc. 34-6 (Dep. Garafola at 41, 133); Doc. 34-7 (Dep. Henry at 60).  In March 2018, the POA sent a referendum to its voting members to enact another amendment, which included the imposition of the impact fee on HLOT's lots.  (Doc. 33-5).  Thereafter, the POA demanded HLOT pay the $2,000 per lot impact fee for 189 lots, per Operating Procedure 3.4, seeking payment of $378,000.  HLOT has not developed any of its lots.  (Doc. 34-7 (Dep. Henry at 57)).

## II.  **Conclusions of Law**

## A.  **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c)(1)-(4) provides as follows:

**(c) Procedures.**
**(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> **(2) *Objection That a Fact Is Not Supported by Admissible Evidence*.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> **(3) *Materials Not Cited*.** The court need consider only the cited materials, but it may consider other materials in the record.
> **(4) *Affidavits or Declarations*.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir.

2005); Gerling Global Reins. Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233 (11th Cir. 2001). "Cross-motions….will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).  "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Muzzy Prods., Corp. v. Sullivan Indus., Inc., 194 F.Supp.2d 1360, 1378 (N.D. Ga. 2002). The Court has reviewed the facts and made its own examination of the record.

**B.**   **Discussion**[4]

Both the declaratory judgment claim and breach of contract claim are rooted in interpretation and application of contract and its terms.

**First**, the POA moves for summary judgment on HLOT's breach of contract claim (Count II).  In the Complaint, HLOT alleges that the POA breached the contract by imposing unlawful impact fees, by refusing to provide documents it requested when required, and by failing to provide notice when required.  At issue are the terms of the contract as HLOT asserts that both the contract and impact fees imposed under same are unenforceable because: 1) the controlling documents disregard the property rights/expectations of non-voting minority members such as HLOT and represent a bad faith attempt to extract additional revenue from HLOT without a rational basis; 2) the terms are ambiguous; and 3) the implementation of the contract and the fees exceed the POA's

---

[4] The parties do not dispute that Alabama law governs. "Alabama law follows the traditional conflict-of-law principles of *lex loci contractus*…." Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So.3d 200 (Ala. 2009). Thus, contract claims are governed by the laws of the state where the contract was made unless the "parties have legally contracted with reference to the laws of another jurisdiction." Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala.1991).  Per the allegations of the Complaint, the relevant events, omissions and real property are located in Baldwin County, Alabama.  (Doc. 1 at 3).

power/authority.  In contrast, the POA asserts that the imposition of fees is valid and enforceable under the controlling contract as well as under Alabama law, and that it did not breach the contract in such a way to invalidate the fee or render it unenforceable as to HLOT's lots.

To establish an Alabama breach of contract claim, a plaintiff must establish: 1) the existence of a valid contract; 2) plaintiff's performance under the contract; 3) defendant's nonperformance; and 4) damages. Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009). Additionally, the elements of a valid contract include an offer and acceptance, consideration, and mutual assent or a meeting of the minds as to the terms essential to the formation of the contract. Ex parte Grant, 711 So. 2d 464, 464 (Ala. 1997) (quoting Strength v. Ala. Dep't of Fin., Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala. 1993))." Univalor Trust, SA v. Columbia Petroleum, LLC, 2017 WL 2303999, *9 (S.D. Ala. May 25, 2017).  The parties dispute appears to be directed towards all four (4) elements -- the validity of the contract (as including Operating Procedure 3.4) and the fees that the POA purports to impose on HLOT via its terms, whether HLOT has performed, whether the POA has failed to perform its obligations, and damages.

As an initial matter, neither party has explained why the POA has demanded $378,000 from HLOT for impact fees on 189 lots when HLOT appears to own only 167 lots (having sold 26 to another developer). Additionally, per the few contract terms that the parties do agree on (that any fees only become due upon the occurrence of the conveyance, selling and/or development of a lot (or lots)) -- the $2,000/lot fee does not appear to even be due yet from HLOT, given HLOT's lack of conveyance, sale and/or development of those remaining lots it still owns.

Even if the Court were able to satisfactorily resolve these questions on summary judgment, the parties vehemently dispute, *inter alia*, facts regarding the authority and reasonableness of the POA's issuance of Operating Procedure 3.4 (amendment to the contract), calculations and rationale

to support the POA's decision, evidence as to how the POA arrived at the fee amount, and grounds for the creation/implementation of the fee itself, etc.  Upon consideration, genuine issues of material fact preclude entry of summary judgment such that the POA's motion on HLOT's breach of contract claim is **DENIED**.

      **Second**, both HLOT and the POA move for summary judgment on HLOT's declaratory judgment claim (Count I).  The Declaratory Judgment Act (DJA) provides that "[i]n a case of actual controversy within its jurisdiction...any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought...." 28 U.S.C. § 2201.  The DJA thus "confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 284 (1995). HLOT's declaratory judgment claim, premised on the allegedly unlawful and unenforceable imposition of impact fees, is based on the same genuine issues of material fact existing in the breach of contract claim. For these reasons, the parties' respective motions for summary judgment on the declaratory judgment claim are also **DENIED.** [5]

**III.**   **Conclusion**

      Accordingly, it is **ORDERED** that both Plaintiff's partial motion for summary judgment (Doc. 33) and Defendant's motion for summary judgment (Doc. 34) are **DENIED.**

      **DONE** and **ORDERED** this the **17th** day of **August 2018.**

               /s/ Kristi K. DuBose
               **KRISTI K. DUBOSE**
               **CHIEF UNITED STATES DISTRICT JUDGE**

---

[5] The declaratory judgment claim appears to be duplicative of the breach of contract claim.